| | | | |
|---|---|---|---|
| | AUSA: | Terrence Haugabook | Telephone: (313) 226-9157 |
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: | Mark Davis, ATF | Telephone: (818) 482-8749 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| | | |
|---|---|---|
| United States of America<br>v.<br>Eddie Lee Nailor, III | Case No. | Case: 2:23−mj−30024<br>Assigned To : Unassigned<br>Assign. Date : 1/20/2023<br>Description: RE: SEALED MATTER (EOB) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 14, 2022__ in the county of __Washtenaw__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Mark Davis, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __January 20, 2023__

_____
Judge's signature

City and state: __Detroit, MI__

Hon. David R. Grand, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF SPECIAL AGENT MARK DAVIS IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Mark Davis, a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, hereby declare and state:

## I. PURPOSE OF THE AFFIDAVIT

1. I am a Special Agent with the ATF. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 21 U.S.C. § 801, et. seq. and 18 U. S.C. § 922(g)(1).

2. The facts set forth in this Affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the issuance of the requested criminal complaint and arrest warrants. Thus, this Affidavit does not set forth all of my knowledge of this investigation.

3. Based on the facts set forth in this Affidavit, there is probable cause to believe that on December 14, 2022, in Ypsilanti, Michigan, Eddie Lee Nailor III, knowing that he was previously convicted of a crime punishable by more than

one year of imprisonment, and currently on State of Michigan Probation through the Michigan Department of Corrections (MDOC) until September 2024, possessed a Sig Sauer, model P229, 9x19mm caliber, semi-automatic pistol bearing serial number: AAU05205, loaded with 12 rounds of 9mm caliber ammunition. The possession is in violation of Title 18, United States Code, Section 922(g)(1) – Felon in Possession of a Firearm.

## II. AFFIANT BACKGROUND AND EXPERIENCE

4.      I am a Special Agent ("SA") with the United States Department of Justice, ATF, currently assigned to the Detroit Field Division, Ann Arbor Field Office. I have completed the following professional training at the Federal Law Enforcement Training Center ("FLETC"), Glynco, Georgia: Criminal Investigator Training Program (12 weeks) and Special Agent Basic Training at the ATF National Academy, located at FLETC (14 weeks). I also received specialized training while attending the academies at FLETC, concerning violations of the Gun Control Act within Title 18 of the United States Code and violations of the Controlled Substance Act within Title 21 of the United States Code. The specialized training that I have received includes but is not limited to: surveillance, interviewing, writing of warrants, handling of evidence, arrest procedures, search procedures, and testifying in court. Since beginning my ATF career in December 2014, I have actively participated in a high volume of cases involving prohibited

persons possessing firearms, persons trafficking firearms and controlled substances, persons possessing illegal firearms, persons affiliated with gang activity, and persons who have committed arson. I have also interviewed confidential informants, witnesses, cooperating defendants, criminal defendants, and other persons engaged in violations of federal law. During my time as a SA in the ATF Los Angeles Field Division, I participated in over 200 law enforcement operations with federal joint task forces and state and local police involving the investigation of violations of firearms, arson, and narcotics laws.

### III. PROBABLE CAUSE

5. Probable cause has been established from records, reports, surveillance, review of body worn camera footage, and speaking to other police officers, ATF Special Agents and public witnesses familiar with the subject of the criminal investigation. The following information summarizes the events that establish probable cause for the requested criminal complaint and arrest warrant:

### 9-1-1 Call placed to Washtenaw County Sheriff's Office Dispatcher and Review

6. On the night of December 14, 2022, The Taco Bell (2995 Washtenaw Ave. Ypsilanti, MI 48197) The Taco Bell Assistant Manager called 9-1-1 and reported that one of his employees that worked the drive through window just had an "uncomfortable" encounter with a male who was holding a pistol in "one hand"

and an "alcohol beverage in the other" while he was inside of his vehicle and completing his food order at the window. The assistant manager stated that he "noticed" his employee giving away free soda to the customer and asked her why. The employee stated to the manager that she was dealing with a man who had a gun in his vehicle and she was trying to "get him out of there by giving him whatever he wanted." The employee stated to the manager that she was giving the man "pops" because he had a gun in his lap and "beverage in the console." The assistant manager stated that vehicle had just departed the Taco Bell restaurant approximately "five minutes ago." The assistant manager stated the man was travelling in a silver Chevy Impala and informed that dispatcher that he obtained the vehicle license plate, he stated that the vehicle license number was 4PED72. The assistant manager further stated that the last known direction of travel of the vehicle was westbound on Washtenaw Avenue.

7.  After the 9-1-1 call was placed by the Taco Bell Assistant Manager, at approximately 11:02 PM, a Washtenaw County Sheriff's Office dispatch radio broadcast was put out to all Washtenaw County Sheriff's Office (WCSO) Patrol Deputies to be on the lookout ("BOLO") for the silver Chevy Impala with a license plate of "4PED72" being driven by a male who had a firearm in the vehicle. The dispatcher broadcasted that the caller had informed the male had the firearm in his

"lap" and alcohol in the center console of his vehicle, and the vehicle was last seen the near the Taco Bell on Washtenaw.

### Washtenaw County Sheriff's Office Deputies Gombos and Cuso Spot the Vehicle

8.     At approximately 11:37 PM, while on proactive patrol that evening in Superior Township in their police vehicle, WCSO Deputies Cuso and Gombos observed a vehicle matching the description of the dispatcher BOLO related to the incident that occurred at the Taco Bell on Washtenaw Ave. Deputies Cuso and Gombos decided to initiate a traffic stop on the suspect vehicle near an address of 88XX Macarthur Boulevard Superior Township, MI 48198, which is located inside an apartment complex.

9.     Once the traffic stop was initiated on the suspect vehicle and the suspect vehicle came to a stop, WCSO Deputy Gombos exited his patrol vehicle and walked up to the driver's side door of the vehicle and introduced himself as Deputy Gombos with Washtenaw County and stated his purpose of the stop by explaining that WCSO Dispatch had received a call from a citizen who worked at Taco Bell about a man with a gun in his "lap." Upon contacting the driver of the vehicle, later identified as Eddie Lee Nailor III (hereinafter referred to as "NAILOR"), Deputy GOMBOS asked NAILOR if he had a gun with him and NAILOR stated that he did not. Deputy GOMBOS then asked NAILOR to step out

of the car and NAILOR stated "I can't do that" and "No!". At the same time, NAILOR'S passenger (later identified as Dejah Lanee Burbank) became extremely argumentative and verbally defiant by shouting at Deputy Gombos. Deputy GOMBOS then asked for identification from both occupants of the vehicle, and they refused to provide it. Deputy Gombos repeatedly asked and then lawfully ordered NAILOR out of the vehicle, but NAILOR still refused to get out and proceeded to argue.  After approximately four minutes of protest and refusal from both occupants of the vehicle, backup WCSO Deputies arrived at the traffic stop scene and assisted WCSO Deputies Cuso and Gombos with the situation.

## Backup WCSO Deputies Arrive at the Traffic Stop Scene

10.     At approximately 11:41 PM, Deputy Simms approached the passenger side of the Impala and made contact with Dejah Burbank. Deputy Simms observed Dejah through the window reaching around her waist and stuffing something into her pants. At that time, Deputy Simms asked Dejah Burbank what she was stuffing into her pants. Dejah exclaimed that she was grabbing her "weed."  Deputy Simms then asked Dejah Burbank to step out of the vehicle. After repeated requests from Deputy Simms, Dejah Burbank exited the passenger seat. Acting as backup, Deputy Howard approached the scene and walked up to the vehicle with his flashlight and observed a gun on the floorboard, underneath the passenger seat. During this time, Deputy Howard yelled, "gun!" and Deputy Gombos then

forcefully removed NAILOR from the driver's seat and other backup WCSO Deputies assisted him with placing NAILOR into handcuffs while he was prone on the ground and actively resisting arrest. As NAILOR was being placed into handcuffs, he stiffened his body out, cursed at the deputies, continued to argue, and did not willfully allow officers to place him into custody.

11. While a few deputies were removing NAILOR from the vehicle and placing him into custody, Dejah Burbank was also placed into handcuffs and detained at the scene because the gun was observed in an open and accessible location. After Dejah was detained, she was escorted to a marked patrol vehicle and placed in the back. Dejah was then read her Miranda Rights by Deputy Simms and after she was read her rights, she verbally agreed to speak to Deputy Simms. The deputy explained to Dejah that Washtenaw County Sheriff's Office had received a call from Taco Bell about her car and the person at the Taco Bell reported that a man driving the car had a gun his possession. Dejah stated that she was confused and didn't understand why the Taco Bell would call about them and that there was no altercation, and the employee even gave them a "free pop."

12. The deputy asked Dejah several questions related to the incident, and when asked if her and NAILOR visited Taco Bell together, Dejah stated that they went to the Taco Bell approximately "thirty minutes ago." The deputy asked if NAILOR had been driving the vehicle the whole time and she said, "yes." The

deputy asked if they stopped anywhere else after leaving the Taco Bell and she said, "no." The deputy asked if there was anyone else with them in the car and she said, "no". The deputy asked if she knew anything about a gun in the car and she said, "no" and she further stated that she didn't see a gun in the car. Dejah was asked by the deputy if the gun that was discovered under her seat was hers and she said, "no" and "I've never had a gun since I've been on the registry" and "it's not mine, but I'm not blaming him." The Deputy asked Dejah if NAILOR handed her the gun and she said, "no." The deputy explained to Dejah that the caller from the Taco Bell observed the gun on NAILOR'S lap and asked Dejah how the gun went from NAILOR's lap to underneath her seat, Dejah replied, "I don't know."

13. After NAILOR was placed into custody by the WCSO Deputies, he was picked up from the ground, searched for weapons and other contraband and placed into the back of a marked patrol vehicle. The deputies stated that they found a gun in the car and NAILOR refuted that fact. The deputies explained that Taco Bell had reported him and NAILOR continued to question the report. While on scene, the deputies recovered the handgun from the vehicle floorboard and conducted a more thorough search of the vehicle and noted there was a large amount of marijuana in the console area, and a Taco Bell bag on the floor across from the gun. The deputies tried to question NAILOR about the firearm in the vehicle, but he was verbally and physically uncooperative. NAILOR had stated to

deputies that he had an injured hand and deputies agreed to lengthen the handcuffs for him to be more comfortable on his way to jail. While seated in the patrol vehicle at the scene, NAILOR slipped the cuffs underneath his legs from behind his back and brought his hands to the front of his body. The deputies informed NAILOR that he could not do that and asked him if he would go back to the original handcuffed position, NAILOR refused the request and the deputies stated that they would pursue resisting and obstructing charges for his non-compliance. Prior to NAILOR being transported to the Washtenaw County Jail, he was transported to a medical facility to be looked at for small lacerations he sustained for resisting the arrest.

## Post Arrest Incident Investigation

14. After the arrest, Deputy Gombos and Deputy Cuso travelled to the Taco Bell and conducted an investigative in person follow-up with Taco Bell Assistant Manager. The assistant manager explained to the deputies the reason for his call and reiterated that his employee was giving a customer free soda because the employee had observed the man holding a gun and had liquor in the car. The deputies asked the assistant manager if he saw what the driver looked like or had a good look at the driver and he stated that he did not, but it did appear that the driver was wearing a red hoodie. At the time of arrest, NAILOR was wearing a red hooded sweatshirt underneath his jacket. The deputies contacted the security

company that was responsible for the CCTV Surveillance at the Taco Bell, the security employee provided the deputies with CCTV stills of the drive-through and they were able to confirm the silver 2013 Chevrolet Impala (MI License Plate No. 4PED72) had been at the drive through lane at the Taco Bell.

15. SA Davis conducted an inquiry on the Sig Sauer that was recovered from the Washtenaw County Sheriff's Office arrest incident of NAILOR and learned that the pistol was reported stolen on December 18, 2021, to the Detroit Police Department by a victim who stated his parked vehicle was broken into via a smashed rear window and his pistol was taken from underneath his driver's seat (DPD Police Report #211XXX-0025). The serial number of the stolen Sig Sauer P229 pistol matched the serial number of the recovered Sig Sauer P229 pistol from the WCSO arrest incident of NAILOR on 12/14/2022 (WCSO Report No. 220100XXX).

## Firearms Interstate Nexus Opinion by ATF Special Agent Davis

16. SA Davis is a trained ATF Interstate Nexus Agent and provides official nexus determinations on firearms and ammunition evidence related to ATF Investigations. SA Davis reviewed WCSO Report No. 220100XXX and evidence photos contained in the report of the Sig Sauer, model P229, 9x19mm caliber, semi-automatic pistol bearing serial number: AAU05205 that was loaded with

twelve (12) rounds of 9mm caliber ammunition inside the magazine. Based on review of the photographs, it is SA Davis' opinion that the Sig Sauer pistol was manufactured outside of the State of Michigan, and therefore, has travelled in and affected interstate commerce since the firearm was recovered in Michigan.

### **Review of NAILOR'S Criminal History by ATF SA Davis**

17. SA Davis has reviewed NAILOR'S Computerized Criminal History (CCH) and observed the following felony convictions:

- Pled nolo contendere of one count of Armed Robbery (specifically, a violation of MCL 750.529) in court case number 121330-FC in the 22nd Circuit Court in Washtenaw County on 02/14/2013. NAILOR was sentenced to a minimum of 3 years and 6 months confinement to a maximum of 20 years. NAILOR ended up serving 5 years in prison.
- Pled guilty to one count of Carrying a Concealed Weapon (specifically, a violation of MCL 750.227), one count of Felon in Possession of a Firearm (specifically, a violation of MCL 750.224F) and one count of Felon in Possession of Ammunition (specifically, a violation of MCL 750.224F6) in court case number 21000557-FH in the 22nd Circuit Court in Washtenaw County on 09/28/2022.

NAILOR was sentenced to 2 years of Michigan Department of Corrections State Probation (09/28/2022 to 09/28/2024).

### IV. CONCLUSION

18. Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that on December 14, 2022, within the Eastern District of Michigan, Eddie Lee NAILOR III possessed a loaded and stolen firearm, while being a prohibited from possessing firearms. Therefore, he was in violation of Title 18, United States Code, Section 922(g)(1) – Felon in Possession of a Firearm.

Respectfully submitted,

_____
Special Agent Mark Davis
ATF

Sworn to before me and in my
presence and/or by reliable electronic means.

_____
Hon. David R. Grand
United States Magistrate Judge

Date: January 20, 2023